IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

LOVIE D. McGREGOR                                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO: 1:04cv868WJG-JMR

NORTHRUP GRUMMAN SHIP
SYSTEMS, INC.                                                        DEFENDANT

MEMORANDUM OPINION

THIS CAUSE comes before the Court on the motion [42-1] of the Defendant, Northrup

Grumman Ship Systems, Inc. [Northrup Grumman] for summary judgment pursuant to Federal

Rule of Civil Procedure 56(c).  The Court, being fully advised in the premises and having

examined the motion and its supporting briefs, the Complaint, and the record in this matter, finds

as follows:

Statement of Facts

The Plaintiff, Lovie D. McGregor was hired at Northrup Grumman's Gulfport facility in

April 2002.  (Ct. R., Doc. 1, p. 2.)  She was terminated on April 1, 2002, for allegedly violating

company policy regarding prescription drugs. but was later rehired at Northrup Grumman at a

lower paying position.  (*Id*.)  Plaintiff filed a complaint with the Equal Employment Opportunity

Commission [EEOC] on March 11, 2004.  (*Id*., Exh. B.)  She contends in her complaint that she

was discriminated against because of her gender, claiming that she received less pay than

similarly situated males in her position.  (*Id*.)  She also claims that her termination, based on her

testing positive for illegal drugs, was pretext because the prescription for the medication was

legal, and both her doctor and pharmacist said there was nothing wrong with the legally

prescribed medication.  (*Id*.)  McGregor asserts that males who tested positive for illegal drugs

were not terminated.  (*Id*.)  She also claims that she was replaced by a male from another

shipyard.  (*Id*.)  The EEOC issued its dismissal and right to sue letter on September 7, 2004,

indicating that following its investigation, the EEOC was unable to conclude that the information

established a violation of the statutes.  (*Id*., Exh. A.)

McGregor's Complaint alleges employment discrimination and wrongful termination in

violation of Title VII; violation of the Equal Pay Act; invasion of privacy; and emotional distress.

(*Id*., pp. 3-5.)  McGregor confesses judgment on her Equal Pay Act claim.  (Ct. R, Doc. 45, p.

12.)

At the time of hire, McGregor was interviewed and took a Pay for Skills [PFS] test which

evaluates an employee's job experience.  At the time of her termination, she was 39 years old and

was terminated because of a suspicious drug test in January 2004.  McGregor contends that she

suffers from chronic asthma and upper respiratory distress which became acute during Christmas

2003, resulting in pneumonia and shortness of breath.  She further contends that she took some

Xanax which she had left from a prior prescription to relieve and prevent worsening symptoms

and shortness of breath.  (Ct. R., Doc. 45, Exh. A., p. 105.)

McGregor avers that she was terminated due to her gender.   She claims that two male co-

workers, Douglas Capps and Jimmy Albritton, instigated her termination.  (*Id*., Exh. B.)  Plaintiff

contends that as a condition for her rehire, she participated in Alcoholics Anonymous meetings

and underwent counseling, along with a pre-employment physical in October 2004.  (Ct. R., Doc.

45, p. 2; Exh. F.)  She claims that Albritton, a male fire-fighter employed at Northrup Grumman

who is an Emergency Medical Technician/Paramedic, performed the pre-employment physical during which she was humiliated and subjected to an unnecessary examination. (*Id.*; Ct. R. Doc. 42-6, pp. 31, 33.) Albritton allegedly directed McGregor to remove all her clothing, and to expose her body for examination to detect osteoporosis.[1] (*Id.*, p. 6; Exh. A, p. 122; Exh. C, pp. 37-8, 40-42.) Sister Kathleen Cain, appearing on McGregor's behalf as an expert in bioethics, opined that screening for osteoporosis does not involve the type of examination that Albritton performed on McGregor. (Ct. R., Doc. 49, Exh. G, pp. 43-48.) Although McGregor indicated that she knew Albritton had some emergency medical qualifications, she stated in her charge of discrimination that she felt uncomfortable with him performing the examination. (Ct. R., Doc. 42-6, p. 31.) A female Administrative Aide, Paula Callahan, was present for the entire examination. (Ct. R., Doc. 42-6, p. 33.)

McGregor also asserts that she was subjected to drug testing on October 14, 2003, and January 4, 2004. (*Id.*, p. 4.) She was summoned by Albritton on January 8, 2004, for a drug test based on an alleged reasonable suspicion of drug abuse following the October 2003 drug test. (*Id.*, pp. 2-3.) She produced each of her prescription medications for review. (*Id.*)

McGregor contends that Northrup Grumman stated she had "no legal prescription for benzodiazepine. (*Id.*, Exhs. B & D.) Dr. Charles Gruich, one of McGregor's physicians, noted that Xanax, a drug he had prescribed for her, is a benzodiazepine. (*Id.*, Exh. E, pp. 12, 49.)

McGregor argues that she has suffered from retaliation for filing her complaint with the EEOC in January 2004 and she believes as a result was subjected to the humiliating pre-

---

[1]A review of the record indicates that the screening during the physical examination at issue was for scoliosis rather than osteoporsis.

employment physical by Albritton.  (Ct. R., Doc. 45, p. 10.)  She claims she was a victim of a hostile work environment as evidenced by the physical examination performed by Albritton, who McGregor contends "conspired" to have her terminated ten months prior to the physical.  (*Id.*, p. 11.)  Plaintiff contends the examination was an invasion of her privacy because of an intrusion into her private doctor/patient relationships and her physical privacy.  (*Id.*)  She avers that she was subjected to an intentional infliction of emotional distress as a result of the circumstances surrounding her termination and rehire.  (*Id.*, p. 12.)

According to Northrup Grumman, during the fall of 2003 because McGregor was behaving in an odd manner, Capps, an individual employed at the Gulfport facility who interacted with McGregor in the warehouse, reported her behavior to Northrup Grumman's medical services department.  (Ct. R., Doc. 42, Exhs. 6 & 7.)  Specifically, Capps stated he observed McGregor slurring her speech and exhibiting extreme mood swings.  (*Id.*, Exh. 6.)  He reported that McGregor seemed "out of her head" on several occasions.  (*Id.*)

Based on this report, McGregor was tested pursuant to Northrup Grumman's Substance Abuse Program and Accident Prevention Drug Screening Procedure, a copy of which was received by McGregor when she was employed.  (*Id.*, Exhs. 8 & 9.)  As part of the testing procedure, McGregor was asked to provide a list of her current prescription medications.  (*Id.*, Exh. 14.)  Billy White, Northrup Grumman's medical services administrator, contacted McGregor to speak with her about the number of prescription medications she was taking and to advise her to get help for an apparent addiction to prescription medications.  (*Id.*, Exh. 10.)  In addition, McGregor's physicians were contacted to advise them of the number of prescriptions McGregor was obtaining.  (*Id.*)

McGregor's odd behavior continued at the workplace and her behavior was again reported to medical services.  (*Id*., Exhs. 6 & 10.)  In January 2004, McGregor was asked to submit to a drug test  and was found to have a drug in her system for which she did not have a prescription.  (*Id*., Exhs. 6, 13.)  The test results were sent to Dr. James Corcoran, an in-house physician who acts as a medical review officer [MRO] for Northrup Grumman.  (*Id*., Exh. 10.) Under Northrup Grumman's substance abuse program, an MRO is authorized to review drug tests and determine whether an employee has violated the company's substance abuse standards. (*Id*.)  The MRO, or other medical technician, then reviews the test results with the employee to allow the employee an opportunity to produce prescriptions to account for the test results.  (*Id*.) If the employee cannot produce prescriptions to account for the test results, the MRO will report a positive for the test.  (*Id*.)

Because McGregor was not able to produce a prescription to account for a metabolite in her system, Northrup Grumman contacted Dr. David Green, the director of the laboratory that analyzed McGregor's drug specimen.  (*Id*.)  Dr. Green determined that none of the prescription drugs McGregor claimed to have been taking at that time would have produced her test results. (*Id*.)  Kristen Barney, Northrup Grumman's human resources generalist, decided that McGregor should be terminated pursuant to the substance abuse drug program.  (*Id*., Exh. 15.)

Under the substance abuse drug program, employees that are terminated for failing drug tests can become eligible for rehire by completing an approved treatment program.  (*Id*.) McGregor agreed to participate in such a program and was rehired as a fiberglass mechanic PFS in October 2004.  (*Id*., Exhs. 5, 17.)  All employees are given a pre-employment physical examination which at that time was conducted by Albritton for all prospective employees at the

Gulfport facility, both male or female. (*Id.*, Exh. 18.) As previously stated, McGregor's examination was conducted in the presence of a female employee, Callahan, on October 1, 2004. (*Id.*, Exh. 3, p. 47; Doc. 42-6, p. 33.) Northrup Grumman asserts that McGregor did not completely disrobe for the examination, that she was covered at all times by a sheet, and that her range of motion was tested by asking her to bend and squat. (*Id.*, pp. 46-7.)

After McGregor complained that Albritton acted improperly during the examination, Melinda Wiley, an employee relations representative for Northrup Grumman, met with McGregor and four other female employees who were examined by Albritton as part of their pre-employment physicals. (*Id.*, Exh. 19.) Wiley determined that nothing inappropriate had happened, however, Northrup Grumman has since revised its physical examination policy and now sends prospective female employees to a female medical technician in Pascagoula for their examinations. (*Id.*, Exh. 15.)

McGregor filed a second EEOC charge on March 18, 2005, alleging that Albritton had performed the physical examination in retaliation for her previous EEOC charge and claimed the examination was intended to create a hostile work environment. (*Id.*, Exh. 18.) The EEOC rejected this claim, concluding that the evidence failed to demonstrate a violation of Title VII. (*Id.*)

Northrup Grumman claims that McGregor cannot establish a *prima facie* case of gender discrimination. (Ct. R., Doc. 43, p. 11.) Northrup Grumman argues that McGregor cannot show that anyone outside the protected group (female) in similar circumstances were allowed to keep their job. (*Id.*) McGregor identified two men as comparators in her deposition: one did not fail the drug test and the other was terminated immediately upon testing positive for illegal

-6-

substances?  (*Id.*, Exh. 1, pp. 72-3; Exh. 23.)  Northrup Grumman asserts that termination for

failing a drug test is automatic.  (*Id.*, Exh. 15.)  According to Northrup Grumman, McGregor

must present evidence that males were treated differently in "nearly identical circumstances,"

which she has failed to establish.  (Ct. R., Doc. 43, p. 12.)  In addition, even if McGregor had

established a *prima facie* case, she has presented no evidence that the failed drug test was a

pretext for gender discrimination.  (*Id.*)

 McGregor explained in her deposition that she was terminated because she and Albritton

had had a misunderstanding and Albritton "had it in" for her.  (Ct. R., Doc. 43, Exh. 1, pp. 66-67,

76.)  Northrup Grumman asserts that Albritton did not make the decision to terminate McGregor

as that determination fell under Barney's responsibility and authority.  (*Id.*, Exh. 15.)  Barney

maintains that McGregor was terminated for failing a drug test and her termination had nothing

to do with her gender.  (*Id.*)

 McGregor's hostile work environment claim must fail according to Northrup Grumman

because she does not allege any conduct which is so severe or pervasive that it created an abusive

environment and destroyed her opportunity to succeed in the workplace.  (Ct. R., Doc. 43, pp.

13-14.)

 Northrup Grumman argues that Title VII bars only conduct which is so severe or

pervasive that it destroys a protected person's ability to succeed in the workplace, and that

conduct which occurs only sporadically but does not hinder a person's performance is not

actionable.  (*Id.*, p. 14.)  McGregor has not alleged any such conduct, according to Northrup

Grumman, because the only complaint she has that could be taken as sexual harassment was the

physical examination conducted by a male paramedic prior to her October 2004 re-employment.

(*Id*.)  Northrup Grumman contends that none of the conduct incident to the examination constitutes sexual harassment, because McGregor was provided a sheet to cover herself; a female attendant was present during the entire examination; the person performing the examination only touched her briefly on her back; and she did not disrobe in front of anyone.  (*Id*., Exhs. 18, 24.)

Even if this behavior exhibited sexual harassment, Northrup Grumman argues that it took prompt remedial action to rectify the situation.  (*Id*., p. 15.)  In response to McGregor's complaint about the incident, an investigator with Northrup Grumman met with her and other women who Albritton had examined in the same manner.  (*Id*., Exh. 1, p. 40.)  The investigator met with the medical technician present at McGregor's examination also, and although the investigator concluded that nothing improper had occurred in the exam, the pre-employment physical policy was altered in that prospective female employees are now sent to a female medical technician in Pascagoula for their pre-employment physical exams.  (*Id*., Exh. 15.)

Northrup Grumman contends that although McGregor claims she was subjected to  a humiliating physical examination in retaliation for filing an EEOC complaint, she has no basis to present this claim.  (Ct. R, Doc. 43, p. 16.)  All prospective employees are required to undergo a pre-employment physical examination and the nature of the exam performed on McGregor was no different from that performed on other prospective employees.  (*Id*.. Exh. 3, p. 48 and Exh. 19.)

McGregor's claim for intentional infliction of emotional distress must fail according to Northrup Grumman, because she cannot show that Northrup Grumman harbored malice toward her or acted with a tortious or criminal intent.  (Ct. R., Doc. 43, p. 18.)  There was no conduct exhibited by Northrup Grumman which was intolerable or atrocious, according to Defendant.

(*Id.*)  Defendant argues that McGregor's alleged distress was not severe enough to merit compensation in this lawsuit, because although she claims her marriage suffered from the event, that she lost sleep and had nightmares, and lost her appetite, she has not produced evidence that Northrup Grumman harbored any malice toward her or acted with tortious or criminal intent. (*Id.*, p. 19.)

Northrup Grumman claims that McGregor's invasion of privacy claim also cannot be sustained, because the physical exam she underwent was the same exam given to all prospective employees at the Gulfport facility.  (*Id.*, p. 20.)  In addition, Northrup Grumman contends that Dr. Charles Gruich testified the method used to examine McGregor for scoliosis – not osteoporosis – during the pre-employment physical was the same method he used in performing these exams.  (*Id.*, Exh. 11, p. 62.)  According to Defendant and as previously stated herein, Callahan, the female medical technician, was in attendance during the entire exam and both she and Albritton left the room while McGregor removed her outer clothes and covered herself.  (*Id.*, Exh. 24.)

Finally, Northrup Grumman argues that it is entitled to summary judgment on McGregor's punitive damages claim because this is not the type of case meriting an award of punitive damages as she cannot establish that Northrup Grumman acted with malice or reckless indifference to her federally protected rights.  (Ct. R., Doc. 43, p. 22.)

McGregor claims that she had a prescription for the drug which showed up in her system in the second test, and denies having abused any drugs.  (Ct. R., Doc. 45, p. 8.)  She contends that Northrup Grumman was not able to produce its drug abuse policy to the Mississippi Employment Security Commission.  (*Id.*)  Nevertheless, Northrup Grumman did produce a copy of the

Accident Prevention Drug Screening Procedure – signed by McGregor as having been received – which outlines that any employee suspected of being under the influence of drugs or alcohol will be tested for drug or alcohol content in their blood.  (Ct. R., Doc. 42-4, p. 24.)  In addition, the substance abuse drug program effective July 18, 2003, outlines that reasonable grounds for belief that an employee is using a substance in violation of the program includes the following: displaying loss of normal motor skills; slurred speech; abnormally dilated or constricted pupils; lack of concentration; belligerency or other indication that the employee might be impaired or influenced by some other substance.  (Ct. R., Doc. 42-4, p. 26.)  The program further provides that "employees shall be required to submit to a substance abuse test when medical personnel confirm such observations."  (*Id*.)  Illicit drugs are defined as "any drug not sanctioned by custom or law, or prescribed by a license physician."  (*Id*.)   If a positive test result is obtained, and it is the first offense, an individual is terminated and referred to the employee assistance program. (*Id*., p. 28.)  When approved drug rehabilitation is completed, and written evidence of the completion of the program is presented, the employee can be considered for rehire.  (*Id*.)

As previously stated, McGregor argues that she was retaliated against and subjected to a hostile work environment when she was subjected to a humiliating pre-employment physical examination.  (Ct. R., Doc. 45, pp. 10-11.)  She claims to have suffered a physical intrusion upon her body and into her private physician/patient relationship.  (*Id*., p. 11.)  Finally, McGregor argues that because the employment security commission did not accept Northrup Grumman's explanation regarding her claims of intentional/negligent infliction of emotional distress, that this Court should find that determination preclusive of any other determination on those claims.  (*Id*., p. 12.)

<u>Discussion</u>

I.   <u>Claims Under Title VII</u>

A.   <u>Gender Discrimination</u>

McGregor contends that she was a victim of gender discrimination, which bears the following elements of proof:  (1) she was a member of a protected class (female); (2) she was qualified for the position; (3) she was discharged or was otherwise subjected to negative employment action; and (4) she was discharged because of her sex.  *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997); *Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1060 (5th Cir. 1998).  Should she present a *prima facie* case of gender discrimination, the burden shifts to Northrup Grumman to rebut her case by demonstrating a "legitimate, nondiscriminatory justification for its actions." *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 882 (5th Cir. 2003); *reh'g & reh'g en banc denied*, 2003 WL 21785385 & *cert. denied* 540 U.S. 1107 (2004).  If the defendant satisfies this burden, the inference of discrimination raised by the *prima facie* case drops from the case and the plaintiff must prove that the proffered reason is mere pretext for discrimination and must create a reasonable inference that her sex was a determinative factor in her termination.  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).  If she cannot meet this burden, summary judgment is appropriately granted.

McGregor must show that her gender played an actual role in the employer's decision-making process and had a "determinative influence on the outcome." *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996) (*en banc*) (ADEA case).  An employee's sincere subjective belief of discrimination cannot provide a plaintiff's sole support for judicial relief. *Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994) *as amended on*

*denial of reh'g* (Nov. 10, 1994); *see Nichols v. Loral Vought Sys.*, 81 F.3d 38, 42 (5th Cir. 1996). There is no question that McGregor is a member of the protected classes and that she was adversely affected by her termination.  McGregor's proof is lacking regarding the fourth prong, as she has not presented evidence that she was terminated because of her gender.  McGregor has not come forward with evidence to establish that her gender had any influence whatsoever on the decisions made in connection with the violation of the drug abuse policy at Northrup Grumman. Northrup Grumman has shown that males in a similar situation were treated in the same manner as McGregor.

Although McGregor claimed that Albritton and Capps conspired to have her terminated, even assuming her allegations are true, their treatment of her regarding the drug policy at Northrup Grumman fails to establish her claim that she was discriminated against because of her gender.  The evidence offered by McGregor fails because Capps was not responsible, primarily or otherwise, for her termination.  While remarks may bear a sufficient causal connection to the employment decision if the speaker has such influence over the decision maker that his animus properly may be imputed to the decision maker, (*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-7 (5th Cir. 2000) (citing *Haas v. ADVO Sys., Inc.,* 168 F.3d 732, 734 n.1 (5th Cir. 1999)), Capps was a co-worker with no influence on ultimate employment decisions such as lay-offs.  Accordingly, the Court concludes that McGregor has not shown that her gender played an actual role in the employer's decision-making process or had a "determinative influence on the outcome." *Rhodes*, 75 F.3d at 994.

Northrup Grumman has shown that McGregor was terminated due to a violation of the drug abuse policy in accordance with company procedures.  The Court finds that Northrup

-12-

Grumman has met the burden of producing a non-discriminatory reason for McGregor's employment separation.  The burden in this regard "is one of production, not persuasion . . . [and] can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 141-2 (2000).  McGregor must meet her burden of showing that Defendant's explanation was merely a pretext for the actual reason she was released, allegedly gender discrimination.

Although an employee may disagree with an employer's decisions, the Court is not in the position to "second guess" those decisions without evidence that an individual's gender was a determining factor in the end result.  *See Bienkowski v. American Airlines, Inc*., 851 F.2d 1503 (5th Cir. 1988).  A plaintiff's sincere subjective beliefs of discriminatory intent behind her employer's employment decisions, without more, is not sufficient to establish a material question of fact regarding the motives for her discharge.  *Shackelford*, 190 F.3d at 408.

For purposes of ruling on this motion, the Court assumes that Plaintiff has presented sufficient evidence to support her *prima facie* case.  Northrup Grumman proffered as its legitimate, non-discriminatory, business reason that Plaintiff was subjected to drug testing, treatment programs, and removal from her job in conjunction with company's zero-tolerance policy regarding drug abuse.  Upon thorough review of the evidentiary record, the Court finds Plaintiff has failed to raise an inference that Defendant's proffered reasons for termination are pretext for gender discrimination.

Nevertheless, McGregor contends that she was treated differently from her co-workers in similar circumstances.  A showing that similarly situated employees outside the protected class received more favorable treatment can serve as evidence of pretext, but only if a plaintiff shows that others were treated more favorably in nearly identical circumstances.  To be similarly

situated in all material respects, a plaintiff must show that the individuals were subject to the same discipline standard and that these individuals engaged in conduct comparable to that of the plaintiff. *Perez v. Texas Dept. of Criminal Justice*, 395 F.3d 206, 210 (5th Cir. 2004), *cert. denied* 126 S.Ct. 545 (2005). McGregor has failed to show that the male employee similarly situated to her was not disciplined in the same fashion as she. The Court, therefore, concludes that Northrup Grumman's motion for summary judgment on any claims of gender discrimination under Title VII should be granted.

    B. <u>Retaliation Claim</u>

Title VII provides in relevant part that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim has three elements: (1) the employee engaged in activity protected by title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002). A title VII plaintiff may recover only if the challenged employment decision rises to the level of an "adverse employment action or must materially affect the terms and conditions of employment." *Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir. 1997). This is true for both discrimination and retaliation claims. *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 298 (5th Cir. 1994). An adverse employment action includes such things as discharge, demotion, refusal to hire, refusal to promote, reprimand, or acts of sabotage by employees against other employees, either condoned or directed by an employer for the purpose of establishing cause for discharge. *Mattern,* 104 F.3d at 707.

An informal oral complaint may also constitute protected activity. *See Pipkins v. City of Temple Terrace, Fl.,* 267 F.3d 1197, 1201 (11th Cir. 2001). "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin,* 110 F.3d 1180, 1188 (5th Cir. 1997); *Evans v. City of Houston,* 246 F.3d 344, 354 (5th Cir. 2001). To demonstrate causation, an employee must show that "but for" the protected activity, the adverse employment action would not have taken place. *Seaman v. CSPH, Inc.,* 179 F.3d 297, 301 (5th Cir. 1999). McGregor cannot rely on her allegations that people were ill-disposed toward her because an alleged adverse decision was made and speculate that protected activities contributed to this disposition. *Reeves*, 530 U.S. at 141; *see Septimus v. University of Houston,* 399 F.3d 601 (5th  Cir. 2005), *reh'g & reh'g en banc denied,* 158 Fed. Appx. 650 (2005) (affirming summary judgment against Title VII retaliation plaintiff, where plaintiff alleged decision maker's knowledge of recent protected activities along with "ongoing harassment" from another manager, and merely speculated that retaliation played a role in decision).

McGregor cannot show that the physical examination was performed in retaliation for the filing of her EEOC complaint. The record shows that all employees are subject to a pre-employment physical examination.  (Ct. R., Doc. 43, Exh. 18.) This does not establish that McGregor was given the examination in retaliation for her EEOC complaint. McGregor must meet her burden of showing evidence of discrimination and mere allegations of such will not suffice. *White v. FCI USA, Inc*., 319 F.3d 672, 677 (5th Cir. 2003); *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir. 1997). The Court, therefore, concludes that Northrup Grumman is entitled to summary judgment on McGregor's claims of retaliation.

C.  Hostile Work Environment

McGregor also asserts a claim for an alleged sexually hostile work environment.  To prevail on a hostile work environment claim, she must prove the following:  (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on gender; and (4) the harassment affected a term, condition, or privilege of employment, which the employer knew or should have known about and failed to take prompt remedial action.  *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-4 (5th Cir. 2001), *reh'g & reh'g en banc denied* 275 F.3d 48.  Sexual hostile work environment harassment occurs when unwelcome harassment based upon sex unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment.  *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 65 (1986).  To be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive working environment.  *Ramsey v. Henderson,* 286 F.3d 264, 268 (5th Cir.2002) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  To establish that an employer's conduct constitutes severe or pervasive harassment, the plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment.  *Harris,* 510 U.S. at 21.

" 'In order to be actionable under [Title VII], a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' " *Butler v. Ysleta Indep. Sch. Dist.,* 161 F.3d 263, 269 (5th Cir.1998) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)).  "Whether an environment meets this standard depends on 'all the circumstances,'

-16-

including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher,* 524 U.S. at 787; *La Day v. Catalyst Techn., Inc.*, 302 F.3d 474, 482 (5th Cir. 2002).

McGregor's proof concerning the allegedly offensive pre-employment physical does not rise to the level required to establish a hostile work environment.  Even if it did, Northrup Grumman has established that it took prompt remedial action, in that an investigator met with McGregor and others that were examined by Albritton.  (Ct. R., Doc. 42-6, p. 34; 42-8, p. 1.)  In addition, the investigator met with Albritton, and although Northrup Grumman concluded that nothing improper had occurred, the pre-employment physical policy was amended to provide that only female medical technicians conduct the pre-employment physical exams on prospective female employees.  (*Id.*, Exh. 15.)  Accordingly, the Court finds that Defendant's motion for summary judgment should be granted on McGregor's hostile work environment claim.

D.  Equal Pay

McGregor conceded her claim of a violation of the Equal Pay Act, thus Northrup Grumman is entitled to summary judgment on this claim.

II.  Claim for Intentional Infliction of Emotional Distress

Recovery for a claim of intentional infliction of emotional distress can be had when a plaintiff shows "there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally . . . the result being reasonably foreseeable . . . even though there has been no physical injury." *Sears, Roebuck & Co. v. Devers*, 405 So.2d 898, 902 (Miss. 1981). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty

-17-

oppression, or other trivialities." *Lawson v. Heidelberg E.*, 872 F. Supp. 335, 338 (N.D. Miss. 1995). "A Mississippi federal court defined the necessary severity as acts so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473, 476 (5th Cir. 2002), quoting *Speed v. Scott,* 787 So.2d 626, 630 (Miss. 2001). Employment disputes including termination generally do not fall within this category. *Prunty v. Arkansas Freightways, Inc.* 16 F.3d 649, 654-5, *reh'g & reh'g en banc denied* 21 F.3d 1110 (5th Cir. 1994); *Lee v. Golden Triangle Planning & Dev. Dist., Inc.,* 797 So.2d 845, 851 (Miss.2001). A party must prove that the defendant's conduct was "extreme and outrageous" to recover damages for intentional infliction of emotional distress. *Burroughs v. FFP Operating Partners, L.P.,* 28 F.3d 543, 546 (5th Cir.1994). The Court finds that Northrup Grumman is entitled to summary judgment on Plaintiff's claims for intentional infliction of emotional distress because the alleged conduct advanced by McGregor does not rise to the level contemplated for recovery of damages for intentional infliction of emotional distress. *See Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 316 (5th Cir. 2003).

III.   Negligent Infliction of Emotional Distress

McGregor has asserted a state law claim based on negligent infliction of emotional distress. (Compl., pp. 3-4.) Any claim of negligent infliction of emotional distress does not comport with McGregor's at will employment status. *Glasgow v. Sherwin-Williams Co.*, 901 F. Supp. 1185, 1192 (N.D. Miss. 1995), *aff'd* 146 F.3d 867 (5th Cir. 1998). In addition, any state law claim for negligence is barred by the exclusive remedy provision of the Mississippi Workers'

Compensation Act[2]. *Campbell v. Jackson Bus. Forms Co.*, 841 F. Supp. 772, 774-5 (S.D. Miss. 1994).  Accordingly, the Court concludes that Northrup Grumman's motion for summary judgment on McGregor's claims of negligence and negligent infliction of emotional distress should be granted.

VI.   <u>Invasion of Privacy</u>

McGregor claims that her fundamental right to be free of unreasonable intrusion into her right to privacy regarding her personal life and body was violated by Northrup Grumman.  To recover on this claim, McGregor must "meet a heavy burden of showing a substantial inference with her seclusion."  *Candebat v. Flanagan*, 487 So.2d 207, 209 (Miss. 1986).  In this case, there is "no liability unless the interference with plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object."  Restatement 2d of Torts, § 652(b), Comment D (1977).  The plaintiff must show some bad faith or utterly reckless prying to recover on an invasion of privacy cause of action.  *Plaxico v. Michael*, 735 So.2d 1036, 1039 (Miss. 1999); *Wilson v. Retail Credit Co.,* 325 F.Supp. 460, 467 (S.D. Miss. 1971) (must show bad faith or utterly reckless prying).

McGregor has not established that Northrup Grumman's actions were strongly objectionable.  No one prior to McGregor had objected to the physical examination.  (Ct. R., Doc. 43, Exh. 10.)  There was testimony from McGregor's own doctor that the method used to perform the examination was the way he would have performed the same examination.  (*Id*., Exh. 11, p. 62.)  Capps reported McGregor's erratic behavior in a good faith belief that McGregor was

_____

[2]Mississippi Code Annotated § 71-3-1, *et seq*.

-19-

under the influence of drugs.  (Ct. R., Doc. 42-2, p. 22.)  McGregor has not shown any bad faith or reckless behavior, nor can she show that the physical examination she was subjected to is any different than the examination given to all prospective employees prior to employment at the Gulfport facility.  (Ct. R., Doc. 42-5, p. 102.)  A woman was present for McGregor's examination and the examination for scoliosis was performed in the same manner as a medical doctor would have had a doctor performed the examination.  (*Id*., Exh. 11, p. 62.)  Both individuals stepped out of the room before McGregor disrobed.  (*Id*., Exh. 24.)  The Court concludes that Northrup Grumman is entitled to summary judgment on McGregor's claim of invasion of privacy.

<u>Conclusion</u>

For the reasons given above, this Court finds that Northrup Grumman's motion [42-1]for summary judgment should be granted.  A separate summary judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date.  Each party shall bear their respective costs associated with this motion.

THIS the 27th day of March, 2007.


*Walter J. Gex III*
_____
UNITED STATES SENIOR DISTRICT JUDGE